IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

v.                                                                                      1:19-cv-1053 JAP/SCY

LINDSAY LYONS,

    Defendant, and

MICHAEL WILLIAM LYONS,

    Defendant/Counter-Plaintiff.

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") filed a COMPLAINT FOR DECLARATORY JUDGMENT RELIEF ("Complaint") (Doc. 1) in which it seeks a declaration that it has no duty to defend or indemnify Defendant/Counter-Plaintiff Michael William Lyons ("Mr. Lyons") in the state court lawsuit ("underlying lawsuit") brought against Mr. Lyons by his daughter, Defendant Lindsay Lyons ("Lindsay"). Doc. 1 at 11. Mr. Lyons counterclaims that he is entitled to a declaratory judgment that Liberty Mutual breached its duty to defend him in the underlying lawsuit and is therefore obligated to reimburse him for the defense costs he incurred and the full value of the settlement reached in the underlying lawsuit.[1] Mr. Lyons has moved for partial summary judgment on his counterclaim, and Liberty Mutual has moved for summary judgment on its Complaint.[2] Having considered the parties' respective motions,

---

[1] *See* DEFENDANT MICHAEL WILLIAM LYONS' ANSWER AND COUNTERCLAIM FOR DECLARATORY JUDGMENT (Doc. 5 at 7).
[2] *See* Mr. Lyons' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 17); PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT FOR DECLARATORY JUDGMENT RELIEF (Doc. 22).

responses, and replies, as well as the applicable law, the Court finds that PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT FOR DECLARATORY JUDGMENT RELIEF (Doc. 22) should be GRANTED. Commensurately, the Court finds that Defendant's MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 17) should be DENIED.

## BACKGROUND

On January 25, 2019, Lindsay filed a Complaint for Personal Injury Resulting from Sexual Abuse ("Original Complaint") against Mr. Lyons, her father, in New Mexico's Second Judicial District Court. Doc. 17 at 2 (Mr. Lyons' Statement of Undisputed Material Facts ("SUMF") ¶ 1); Doc. 17-1.[3] Lindsay alleged that she was "repeatedly sexually abused by [Mr. Lyons] at his home in Albuquerque and at his vacation home in Pagosa Springs, Colorado" from the time she was five years old until her teenage years and that she suffered "severe emotional distress and serious mental and economic injuries and damages" as a result of Mr. Lyons' actions. Doc. 17-1 at ¶¶ 5, 9–13; *see* Doc. 17 at 2–3 (SUMF ¶¶ 2–4). During the relevant period, Mr. Lyons had a LibertyGuard Deluxe Homeowners Policy ("Policy") with Liberty Mutual that insured his Albuquerque residence.[4] Doc. 1 at ¶ 21; *see* Docs. 1-2 through 1-8. On June 19, 2019, Mr. Lyons' attorney in the underlying lawsuit sent a letter to Liberty Mutual's claims department, informing Liberty Mutual of the underlying lawsuit and requesting that Liberty Mutual contact her "to discuss coverage for further defense of this claim." Doc. 17-5; *see* Doc. 17 at 3 (SUMF ¶ 5).

---

[3] Liberty Mutual does not dispute Mr. Lyons' Statement of Undisputed Material Fact. *See* PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE TO DEFENDANT/COUNTER-PLAINTIFF MICHAEL LYONS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 21 at 4).

[4] The Policy, which was issued to Mr. Lyons and Jill M. Marjama Lyons, does not appear to cover the Colorado residence, a fact that neither party addresses and that Mr. Lyons appears to concede. *See* Doc. 17 at 1–2 (acknowledging that "Liberty Mutual had a contract with [Mr. Lyons], whereby it promised to provide him a defense for claims *arising out of the Albuquerque home*" (emphasis added)).

On August 20, 2019, Lindsay filed an Amended Complaint for Personal Injury ("Amended Complaint") against Mr. Lyons. Doc. 17 at 3 (SUMF ¶ 6); Doc. 17-2. The Amended Complaint continued to allege that Lindsay "was repeatedly sexually molested" at Mr. Lyons' homes in Albuquerque and Pagosa Springs but removed the allegations that it was Mr. Lyons, specifically, who molested her. *Compare* Doc. 17-1 at ¶¶ 5, 8, *with* Doc. 17-2 at ¶¶ 5, 7. Like the Original Complaint, the Amended Complaint alleged that Mr. Lyons owed Lindsay a duty of ordinary care "as a homeowner and parent to keep the premises safe for [Lindsay's] use[,]" that Mr. Lyons breached that duty, and that Mr. Lyons' breach "proximately caused [Lindsay] to suffer damages." Doc. 17-1 at ¶¶ 9–11 (Original Complaint), Doc. 17-2 at ¶¶ 8–10 (Amended Complaint); *see also* Doc. 17 at 3 (SUMF ¶ 7). Lindsay specifically alleged that she has suffered "severe emotional distress and serious mental and economic injuries and damages[.]" Doc. 17-2 at ¶ 12. On August 29, 2019, Mr. Lyons' attorney emailed the Amended Complaint to Zach Weichman, the Liberty Mutual claims specialist handling Mr. Lyons' claim. Doc. 17 at 3 (SUMF ¶ 8); Doc. 17-6.

Liberty Mutual filed the instant lawsuit on November 11, 2019. *See* Doc. 1. On November 12, 2019, Mr. Weichman sent Mr. Lyons' attorney a letter explaining that "based upon the allegations contained in the Complaint filed by Lindsay Lyons, the facts known at this time[,] and a review of the applicable insurance policies," Liberty Mutual was denying Mr. Lyons' request for a defense and indemnity in the underlying lawsuit. Doc. 17-4 at 1; *see* Doc. 17 at 3 (SUMF ¶ 9). Liberty Mutual explained that it concluded that there was "no coverage" under the Policy for the claims Lindsay made in the underlying lawsuit for the following reasons: (1) the injuries claimed by Lindsay—i.e., emotional distress, mental injuries, and economic damages—"do not constitute 'bodily injury' as defined by the Liberty Mutual policies"[5]; (2) the "acts" alleged "to have been

---

[5] Liberty Mutual raised this issue in its Complaint (Doc. 1 at 11) but does not advance an argument on this basis in its Motion for Summary Judgment. *See* Doc. 22.

committed by Mr. Lyons (*i.e.*, sexual abuse and molestation) are intentional acts" that either do not "constitute an 'occurrence' as defined by the Liberty Mutual policies, and/or are excluded by the 'expected and intentional' acts exclusion"; (3) the applicability of an exclusion "precluding coverage for 'sexual molestation, corporal punishment or physical or mental abuse'"; (4) the applicability of an exclusion "precluding coverage for household family members[.]" Doc. 17-4 at 6; *see* Doc. 17 at 3 (SUMF ¶ 9). On November 20, 2019, Mr. Lyons participated in a court-ordered mediation in the underlying lawsuit and ultimately reached a settlement with Lindsay. Doc. 17 at ¶¶ 11–12; Doc. 17-7.

On February 7, 2020, Mr. Lyons answered Liberty Mutual's Complaint and filed a counterclaim for declaratory judgment. *See* Doc. 5. In his counterclaim, Mr. Lyons asks the Court to (1) dismiss Liberty Mutual's Complaint; (2) declare that Liberty Mutual (a) had a duty to defend him "based on the allegations of general negligence" in the underlying lawsuit, and (b) has waived all arguments that it is not required to indemnify him because it failed to defend him; and (3) order Liberty Mutual to reimburse him for his defense costs and the full value of the settlement he entered into with Lindsay in the underlying lawsuit.[6] *Id.* at 7.

Both parties have moved for summary judgment on the question of whether Liberty Mutual had a duty to defend Mr. Lyons in the underlying lawsuit. Docs. 17, 22. Liberty Mutual contends that the undisputed facts show that it had no duty to defend Mr. Lyons because the claims in the

---

[6] In moving for partial summary judgment, Mr. Lyons argues that Liberty Mutual is liable for any settled amount in excess of the Policy limits because it acted in bad faith in refusing to defend Mr. Lyons. Doc. 17 at 18–19. Liberty Mutual argues that Mr. Lyons' request for extracontractual damages should be summarily rejected because he did not assert a claim for bad faith in his Counterclaim. Doc. 21 at 23. Mr. Lyons counters that his assertion that Liberty Mutual "unreasonably breached its duty to defend . . . .inherently includes the assertion of a bad faith failure to defend." *See* DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT *and* REPLY IN SUPPORT OF DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 24 at 15–16). He requests leave to amend his Counterclaim to include a claim for bad faith if the Court agrees with Liberty Mutual that his Counterclaim fails to give notice of a bad-faith claim. *Id.* at 16 n.4. Because the Court concludes that Liberty Mutual had no duty to defend Mr. Lyons, the Court does not reach the merits of this issue.

underlying lawsuit clearly fell outside the Policy's coverage. Doc. 22. Mr. Lyons argues that the allegations in Lindsay's Amended Complaint plausibly stated a claim within the Policy's coverage and that none of the Policy's exclusions clearly applied, meaning that Liberty Mutual breached its duty to defend him by unilaterally refusing to tender a defense. Doc. 17.

## STANDARD

On a party's motion for summary judgment or partial summary judgment, the Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider "all evidence in the light most favorable to the non-moving party."[7] *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). Interpretation of an insurance policy, like any contract, presents a pure question of law that is properly decided on summary judgment. *See Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 984 (N.M. 1997) ("The interpretation of an insurance contract is a matter of law about which the court has the final word.")

Because this is a diversity action, New Mexico substantive law applies in determining whether Liberty Mutual had a duty to defend Mr. Lyons in the underlying lawsuit. *See Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980) ("It is axiomatic that the substantive law of the State of New Mexico applies with respect to the issues involved in [a] federal declaratory relief action predicated upon complete diversity of citizenship, and requisite amount in controversy." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In New Mexico, "[t]he obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy." *Miller v. Triad Adoption & Counseling Servs., Inc.*, 65 P.3d 1099, 1102 (N.M.

---

[7] Because the Court is deciding this case on Liberty Mutual's motion, the Court construes the evidence in the light most favorable to Mr. Lyons, the non-moving party. *Cf. Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately[.]").

Ct. App. 2003). "Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy." *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994). An "insurance company is obligated to defend when the complaint filed by the claimant alleges facts potentially within the coverage of the policy." *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017) (quotation marks and citation omitted). "The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." *Am. Emps. Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973) (quotation marks and citation omitted). A duty to defend may thus arise "from the known but unpleaded factual basis of the claim that brings it arguably within the scope of the coverage." *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M. 1990). "[T]he insurer bears the burden of proving that there is no duty to defend, and any doubt about whether the allegations are within the policy coverage is resolved in the insured's favor." *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1274 (D.N.M. 2019) (quotation marks and citation omitted). But "the insurer has no duty to defend if the allegations in the complaint clearly fall outside the policy's provisions." *Guaranty Nat'l Ins. Co. v. C de Baca*, 907 P.2d 210, 214 (N.M. Ct. App. 1995).

"Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Hinkle v. State Farm Fire & Cas. Co.*, 308 P.3d 1009, 1014 (N.M. Ct. App. 2013) (alteration, quotation marks, and citation omitted). "An insurance contact should be construed as a complete and harmonious instrument designed to accomplish a reasonable end." *Lopez*, 870 P.2d at 747 (quotation marks and citation omitted). "If a policy is clear and unambiguous, then the court does not construe terms; it merely gives the terms their usual and ordinary meaning." *Dove*, 399

P.3d at 407 (quotation marks and citation omitted). In New Mexico, the purpose of an exclusionary provision in an insurance contract is "to restrict the scope of the policy beyond what would otherwise be covered." *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 650 (N.M. 2012). Although exclusionary provisions "must be narrowly construed," *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 396 (N.M. 1992), they must "be enforced so long as their meaning is clear and they do not conflict with statutory law," *Chavez v. State Farm. Mut. Auto. Ins. Co.*, 533 P.2d 100, 102 (N.M. 1975) (alteration, quotation marks, and citation omitted).

## DISCUSSION

The central question before the Court is whether Liberty Mutual had a duty to defend Mr. Lyons in the underlying lawsuit. Liberty Mutual advances numerous arguments to show that it did not. *See* Doc. 21 at 9. Liberty Mutual first argues that the allegations against Mr. Lyons do not constitute an "occurrence" as defined by the Policy, meaning that neither coverage nor a duty to defend was ever triggered. Doc. 22 at 1–2, 14–16. Alternatively, Liberty Mutual argues that even if coverage was triggered, any of several exclusions—(1) for bodily injury "[w]hich is expected or intended by the 'insured'" ("Exclusion 1.a"), (2) for bodily injury "[a]rising out of sexual molestation, corporal punishment or physical abuse" ("Exclusion 1.k"), and/or (3) for bodily injury to an insured, which includes "residents of [the named insured's] household who are . . . [the named insured's] relatives" ("Exclusion 2.f")—clearly took any potential claim outside the Policy's coverage, thereby relieving Liberty Mutual of its duty to defend. *Id.* at 2, 17–22.

Mr. Lyons argues that the Amended Complaint stated a claim for negligence that fell within the Policy's definition of "occurrence" and thus within its coverage, triggering Liberty Mutual's duty to defend. Doc. 24 at 5–9. He further argues that Liberty Mutual has failed to meet its burden

7

to establish that any of the Policy's exclusions clearly applied, thereby relieving it of that duty. *Id.* at 9–13.

The Court agrees with Mr. Lyons that the Amended Complaint—the operative document for purposes of determining whether Liberty Mutual had a duty to defend Mr. Lyons—states a claim within the Policy's coverage. The Court ultimately concludes, however, that Exclusion 1.k precludes coverage for the claim brought in the underlying lawsuit and that Liberty Mutual is therefore entitled to judgment as a matter of law that it had no duty to defend Mr. Lyons.[8]

I.  The Amended Complaint Alleged an "Occurrence" Within the Policy's Coverage

In relevant part, the Policy included personal liability coverage for "bodily injury" caused by a covered "occurrence[.]" Doc. 17-3 at 7. "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results." Doc. 17-3 at 6. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in . . . [b]odily injury." Doc. 17-3 at 6.

Liberty Mutual—which conflates the Original Complaint and Amended Complaint and treats them as substantively and materially identical[9]—argues that "the Complaints do not allege an 'occurrence[]' because the claims arise out of intentional acts of sexual abuse and/or molestation perpetrated by the named insured." Doc. 22 at 15. According to Liberty Mutual, "Mr. Lyons was the perpetrator [of the alleged sexual molestation] and cannot be held separately responsible for

---

[8] Because the Court concludes that Exclusion 1.k applies and precludes coverage, the Court does not reach the merits of the parties' arguments regarding the applicability of Exclusions 1.a and 2.f.
[9] According to Liberty Mutual, "[t]he Amended Complaint made very minor linguistic changes and did not assert additional or factual allegations." Doc. 22 at 3 n.2. As the Court's ensuing discussion makes clear, the Amended Complaint made more than "minor linguistic changes[.]" It quite clearly amended the factual allegations to remove all references to intentional wrongdoing by Mr. Lyons.

negligently failing to keep his daughter safe from his own intentional actions." Doc. 22 at 16. Liberty Mutual's characterization of "the Complaints" is plainly incorrect.

While true that the Original Complaint alleged that Lindsay was "sexually abused *by* [*Mr. Lyons*]" Doc. 17-1 at 2 (¶ 5) (emphasis added), the Amended Complaint does not allege that Mr. Lyons was the perpetrator of the sexual abuse, *see* Doc. 17-2. Rather, the Amended Complaint generally and passively alleges that Lindsay "was sexually molested" but identifies no specific perpetrator. *See* Doc. 17-2 at 2 (¶¶ 5–6). Liberty Mutual fails to acknowledge this obvious and material difference between the Original and Amended Complaints. It incorrectly insists that "[t]he only acts described in the Complaints are acts of sexual abuse and/or molestation," Doc. 22 at 15 and impermissibly reads into the Amended Complaint a fact that simply is not alleged: that Mr. Lyons sexually molested Lindsay.

Taking as true only the facts as pleaded, it is possible to read the Amended Complaint as claiming that Mr. Lyons breached a duty he owed to Lindsay by unintentionally and unknowingly—i.e., negligently, or accidentally[10]—allowing her to be molested by a third party in his home. Although it appears to the Court that the Amended Complaint may have been revised as it was "for the sole purpose of reaching the insurance policy proceeds[,]" *State Farm Fire & Casualty Company v. Ruiz*, 36 F. Supp.2d 1308, 1315 (D.N.M. 1999)—an approach to drafting that this Court has previously found questionable, *see id.*[11]—Liberty Mutual wrongly relies on facts not pleaded to support its contention that the Amended Complaint failed to state a claim for

---

[10] Liberty Mutual relies on the New Mexico Supreme Court's discussion in *Vihstadt v. Travelers Ins. Co.*, 709 P.2d 187, 199 (N.M. 1985), regarding how the term "accident" should be construed when undefined in an insurance policy. Doc. 22 at 14–15. In *Vihstadt*, the New Mexico Supreme Court referred to its prior definition of "accident" as "express[ing] the thought of an event occurring without design or purpose, or unintentionally on the part of the assured" and meaning "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Vihstadt.*, 709 P.2d at 199 (quotation marks and citation omitted).

[11] Explaining that the "Court recognizes the potential for artful if not deceptive pleading to bring a complaint within the coverage of an insurance policy even when the plaintiff knows full well that facts exist which would preclude coverage" and stating that "the Court does not endorse this type of behavior[.]"

an "occurrence" within the Policy's coverage. The Court concludes that the Amended Complaint alleged facts that state a claim for bodily injury caused by a covered occurrence, meaning Liberty Mutual had a duty to defend Mr. Lyons unless an exclusion clearly takes the claim outside the Policy's coverage. It is to that question that the Court now turns.

II.     Exclusion 1.k Applies and Precludes Coverage for Lindsay's Claim

Exclusion 1.k provides that personal liability coverage "does not apply to 'bodily injury' . . . [a]rising out of sexual molestation, corporal punishment or physical or mental abuse[.]" Doc. 17-3 at 7–8 (Section II – Exclusions, 1.k). Neither party argues that Exclusion 1.k is ambiguous or unclear. It quite plainly informs the insured that claims for "bodily injury . . . [a]rising out of sexual molestation"—whether alleged to have been perpetrated by the insured or another party—are excluded from coverage. Mr. Lyons does not contend otherwise. *See* Doc. 17 at 9–14; Doc. 24 at 9–12.

Rather, Mr. Lyons argues that Lindsay's allegations were general enough to state a claim against him arising from conduct unrelated to the alleged sexual molestation, meaning Exclusion 1.k cannot provide an exclusive basis for Liberty Mutual to refuse to defend him. According to Mr. Lyons, Lindsay "broadly alleged that she sustained 'injuries' from [Mr. Lyons'] breaches of his duty to keep her safe and the premises safe" and "did not allege that all of her injuries arose from sexual molestation." Doc. 24 at 11. He posits that Lindsay "may have intended to prove that [Mr. Lyons] breached his duties to keep her and the premises safe in some manner unrelated to the alleged sexual molestation." *Id.* at 10–11. In support of this contention, he cites (parenthetically and only in part[12]) a single allegation in the Amended Complaint: "[Mr. Lyons], by failing to keep the premises safe for [Lindsay], and by failing to ensure [Lindsay] was safe on the premises,

---

[12] *See* Doc. 24 at 10.

10

breached his duty to exercise ordinary care regarding [Lindsay]." Doc. 17-2 at ¶ 9.[13] Mr. Lyons argues that the phrase "by failing to keep the premises safe for [Lindsay's] use, and by failing to ensure [Lindsay] was safe on the premises" sufficiently put Liberty Mutual on notice of a claim for negligence against Mr. Lyons that was unrelated to the sexual molestation allegations and to which Exclusion 1.k did not clearly apply. Doc. 24 at 10–11. Relying on *Lopez* and *Ruiz*, he maintains that "the underlying action clearly states a claim for negligence against [Mr. Lyons] that is separate from the factual assertions of sexual molestation" and that "[i]t was readily plausible that the allegations of negligence against [Mr. Lyons] arose from facts other than the allegations of sexual molestation." Doc. 17 at 13. Mr. Lyons' reliance on *Lopez* and *Ruiz* is misplaced, and the Court disagrees that the Amended Complaint even possibly stated a claim for an injury arising out of anything other than the alleged sexual molestation.

In *Lopez*, the parents of a student who alleged that she was sexually molested by her special education teacher sued the teacher, the school's principal, and the school district. 870 P.2d at 746. The parents brought not only tort claims arising from the alleged molestation but also civil rights claims based on the school district's failure to enforce the student's Individual Education Program ("IEP") and an allegation that the school district discriminated against the student on the basis of race. *Id.* The school district's insurer, the New Mexico Public Schools Insurance Authority ("NMPSIA"), refused to provide a defense based on the applicable policy's "Sexual Misconduct Exclusion." *Id.* at 747. The school district sought and was awarded a declaratory judgment that NMPSIA was obligated to defend and indemnify it. *Id.* at 746. The New Mexico Supreme Court affirmed the trial court's ruling, holding that although NMPSIA had no duty to defend either the

---

[13] Mr. Lyons cites the Original Complaint rather than the Amended Complaint. *See* Doc. 24 at 10. The Court cites the Amended Complaint as that is the operative document. Paragraph 10 of the Original Complaint, cited by Mr. Lyons, is identical to Paragraph 9 of the Amended Complaint. *Compare* Doc. 17-1 at ¶ 10, *with* Doc. 17-2 at ¶ 9.

tort claims arising from sexual molestation or claims that failed to allege specific damages, NMPSIA had a duty to defend the school district until it could establish that *all* the claims—i.e., the civil rights claims—arose out of the sexual misconduct. *Id.* at 747–49. The New Mexico Supreme Court explained that although it appeared that the civil rights claims "most likely arose from the molestation and alleged failure of the School District to respond to or prevent those acts," it could not say "as a matter of law that the alleged civil rights violations arose out of the sexual misconduct." *Id.* at 748–49. Noting that the parents' complaint was "written in extremely general language" and included allegations that the school district "failed to provide evenhanded treatment and reasonable accommodations" and that the student's "status as an Hispanic person contributed to that failure," the court concluded that "[b]ased on the general allegations, it is possible that the [parents] may have intended to prove that the School District failed to enforce the IEP or discriminated against them in some manner unrelated to [the student's] molestation." *Id.* (quotation marks omitted).

This case is distinguishable from *Lopez*. Unlike in *Lopez* where the underlying lawsuit involved multiple and different kinds of claims—some clearly arising from sexual molestation allegations and others likely, though not conclusively, relating to sexual misconduct—here, there was a single claim made in the underlying lawsuit: one for personal injury to Lindsay caused by Mr. Lyons' alleged failure to protect Lindsay from the sexual molestation that occurred in Mr. Lyons' homes. Notably, the complaint in *Lopez* included factual allegations of race-based discrimination and failure to provide an adequate education in violation of federal law, i.e., allegations unrelated—at least on their face—to sexual molestation. Here, however, the factual allegations forming the basis of Lindsay's claim all relate to sexual molestation:

      3.      The *incidents* that give rise to this suit occurred at the home of [Mr. Lyons] . . . in Albuquerque, New Mexico, and at the vacation home of [Mr. Lyons] . . . in Pagosa Springs, Colorado.

      . . .[14]

      5.      During [Lindsay's] childhood, beginning at a young age, [Lindsay] was repeatedly *sexually molested* at [Mr. Lyons'] home in Albuquerque, New Mexico and at [Mr. Lyons'] vacation home in Pagosa Springs, Colorado.

      6.      [Lindsay] recalls *these incidents of sexual molestation* occurring over a period of approximately eight years, from the time [Lindsay] was five years-old until she was twelve or thirteen years-old, approximately between the years 2002 and 2010.

            i.      [Lindsay] was *sexually molested* at [Mr. Lyons'] Albuquerque home approximately two times per year, for eight years.

            ii.      [Lindsay] was *sexually molested* at [Mr. Lyons'] Colorado home once, around 2009.

      7.      During each of *these incidents* [Lindsay] was a child, and never did [Lindsay] initiate, invite or acquiesce to *the sexual molestation*.

Doc. 17-2 at 1–2 (emphases added).

The Amended Complaint contains no other factual allegations, only legal conclusions setting forth the elements of Lindsay's tort claim against Mr. Lyons. *See* Doc. 17-2 at ¶¶ 8–13. The lone allegation that Mr. Lyons suggests provided notice of a claim unrelated to the sexual-

---

[14] Paragraph 4 of the Amended Complaint contains a statement regarding jurisdiction and venue. *See* Doc. 17-2 at ¶ 4.

molestation allegations—"[Mr. Lyons], by failing to keep the premises safe for use by [Lindsay], and by failing to ensure [Lindsay] was safe on the premises, breached his duty to exercise ordinary care regarding [Lindsay]"—is not a factual allegation and fails to provide notice of not only a separate, potentially covered claim but also the alleged grounds for any such claim. *Cf. Schmitz v. Smentowski*, 785 P.2d 726, 729 (N.M. 1990) (explaining that a complaint must "give the parties fair notice of the claims and defenses against them, *and the grounds upon which they are based*" (emphasis added)). It merely sets forth the breach element of Lindsay's negligence claim, a claim that flows solely from Lindsay's allegations of sexual molestation articulated in the immediately preceding paragraphs. While Mr. Lyons is correct that New Mexico's notice pleading standard does not require claims to be pleaded with specificity, even general averments must be "set forth *with sufficient detail* so that the parties and the court will have a fair idea of the action about which the party is complaining *and can see the basis for relief*." *Id.* at 729–30 (emphases added); *cf. Credit Institute v. Veterinary Nutrition Corp.*, 62 P.3d 339, 344 (N.M. Ct. App. 2002) ("Although our liberal rules of notice pleading do not require that specific evidentiary detail be alleged in the complaint, . . . we believe that at least some factual predicate for [a claim] must be set forth in the complaint to give [the defendant] fair notice of the claim." (citations omitted)). Here, the only averments setting forth sufficient *factual* detail to give fair notice of a claim all relate to Lindsay's allegations of sexual molestation.

The other case that Mr. Lyons relies on, *Ruiz*, 36 F. Supp. 2d 1308, is inapposite. In *Ruiz*, an insurer brought a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify its insured, who had been sued for wrongful death and negligence for allegedly causing the death of his five-year-old son. 36 F. Supp. 2d at 1309, 1310. The insurer refused to provide a defense based on its contention that the complaint's factual allegations did not allege an

14

accidental occurrence within the policy's coverage but instead alleged only intentional conduct that fell within the policy's "intended or expected" exclusion and was thus "clearly" outside the policy's coverage. *Id.* at 1314. The district court acknowledged that the father had been convicted of child abuse as a result of the child's death, *id.* at 1310, and noted that "it appears to this [c]ourt from the factual allegations supporting the causes of action that these claims most likely arose from the abuse leading to the conviction," i.e., from intentional, noncovered conduct, *id.* at 1315 (quotation marks and citation omitted). It further expressed its concern that "the complaint may have been intentionally drafted with ambiguities for the sole purpose of reaching the insurance policy proceeds." *Id.* at 1315. Yet, finding that "[t]he facts pled could support a claim for an accidental death which would be within the coverage of the . . . policy[,]" the district court held that the insurer breached its duty to defend because "the facts pled do not clearly place the injuries beyond the scope of the insurance coverage." *Id.* at 1316. Specifically, the court noted that the complaint alleged that the child's death "was caused by traumatic closed head injuries. It was reported that he fell off a trailer from a height of five feet, seven inches at his father's residence[.]" *Id.* at 1313. The court reasoned that because "death from a fall could reasonably be an accident, the facts of the complaint do no[t] clearly preclude coverage" under the policy's "intended or expected" exclusion. *Id.* at 1315. As such, the insurer had a duty to defend its insured "until it satisfied the trial court in the primary action that all claims arose from excludable acts[,]" i.e., intentional conduct. *Id.* at 1316. Its failure to do so and unilateral decision not to provide a defense constituted a breach of that duty. *Id.*

    *Ruiz*—although perhaps relevant to whether Exclusion 1.a, the Policy's "expected or intended" exclusion[15], relieved Liberty Mutual of its duty to defend—has no bearing on whether

---

[15] Exclusion 1.a provides that there is no coverage for "bodily injury . . . [w]hich is expected or intended by the insured[.]" Doc. 17-3 at 7.

it was proper for Liberty Mutual to refuse to provide a defense under Exclusion 1.k. The possible inapplicability of an exclusion for injuries that are "expected or intended by the insured" is of no moment in determining the applicability of an exclusion for injuries "[a]rising from sexual molestation." As already discussed, Exclusion 1.k plainly excludes from coverage any "bodily injury . . . [a]rising from sexual molestation," regardless of whether the injury was sustained as a result of intentional or negligent conduct. *Ruiz*, a case that has nothing to do with sexual molestation, is of no aid to Mr. Lyons.

Mr. Lyons' contention that the Amended Complaint could be construed as stating a general claim of negligence wholly unrelated to Lindsay's sexual-molestation allegations is simply unavailing. He has pointed to no *factual* allegations that even possibly indicate that Lindsay had brought an additional negligence claim against Mr. Lyons based on alleged bodily injury arising from something other than sexual molestation. While an insurer has a duty to defend where it knows of unpleaded facts that bring a claim within a policy's coverage, it would seem to go without saying that an insurer can be under no obligation to defend against a theoretical "claim" based on facts that are neither known to the insurer nor pleaded in the complaint. *See Am. Emps. Ins. Co.*, 512 P.2d at 676 (explaining that "[t]he insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, *provided the alleged facts tend to show an occurrence within the coverage*" (emphasis added) (quotation marks and citation omitted)). Because the facts alleged in the Amended Complaint gave notice of a single claim for injuries arising from alleged sexual molestation, Liberty Mutual had no duty to defend because Exclusion 1.k clearly precluded such a claim from the Policy's coverage. And because Liberty Mutual had no duty to defend Mr. Lyons, it also has no duty to indemnify him. *See Bernalillo Cty.*

*Deputy Sheriffs Ass'n v. Cty. Of Bernalillo*, 845 P.2d 789, 791 (1992) ("If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required.").

## CONCLUSION

IT IS THEREFORE ORDERED THAT:

(1) PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT FOR DECLARATORY JUDGMENT RELIEF (Doc. 22) is GRANTED.

(2) Liberty Mutual is declared, as a matter of law, to have no duty to defend or indemnify Defendant Michael William Lyons in the underlying lawsuit.

(3) Mr. Lyons' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 17) is DENIED AS MOOT.

_____
SENIOR UNITED STATES DISTRICT JUDGE